25-490 Stidhum v. Hillside Auto Ave. Counsel Troy, I understand you've reserved three minutes for rebuttal.  All right, you may proceed when you are ready. Good morning, Your Honors. May it please the Court, this is Tiffany Troy from Troy Law, PLLC, attorney for Appellant Letitia Stidhum. I would like to raise five main points. The first main point is that applying Mudro v. City of St. Louis, which is an employment transfer case to employment cases generally, a plaintiff only need to show some harm respecting an identifiable term or condition of employment, and under such a standard, the increase in plaintiff's wait time, which resulted in lesser pay, could constitute an adverse action. Plaintiff was the top salesperson at the time of her pregnancy announcement in November of 2018, and after the implementation of the longer wait time, mid-December 2018, her pay decreased substantially. Tiffany, counsel, I'm inclined to agree with you that the district court was incorrect in saying there was no adverse action. I think given the Supreme Court's recent decisions, I think adverse action is easier to show. My problem has to do with the link between her pregnancy and what happened, that is, the evidence of discrimination. So I don't know about the others, but as far as I'm concerned, I'd like you to focus on that, because that's what I'm worrying about. Yes, focusing on that, I would point your honor to the temporal proximity between the implementation of the longer wait time, which occurred roughly one month after the plaintiff's pregnancy announcement, and the corresponding increase in the wait time, which the respondents could not explain, other than point to additional speculative factors outside of their control. Isn't it just, I mean, so nothing happened for a month while she still had access herself through a colleague's credentials to do the credit checks, and then that colleague, as she doesn't have direct, and the credentials change, she doesn't have direct access, and so she, like every other salesperson, has to wait. Isn't that what explains the discrepancy that occurs a month later in terms of the delayed sales time from what she, the delayed credit check time from what she had before to what she has later? So plaintiff was the top saleswoman at the time of the pregnancy announcement, and she was given a bonus as a reward in recognition of her top performance, subsequent to the loss of the dealer track access, which your honor is correct to point out. It wasn't just that she waited the same as her comparators. Instead, what happened was that Andres Guzman would prioritize other people's, her comparators as application, put that through, and not prioritize plaintiffs as application. What do you point to explicitly, directly in the record for the claim that Mr. Guzman made the plaintiff wait longer than her coworkers? So during the deposition of the plaintiff, and I, we did mention that in the brief. If your honor, give me one moment. But what is it that would make us think that it was her pregnancy that led to this, rather than to a fact that the boss went off or a vacation, you know, a change in time and who was doing it, rather, which happened to be also when she was pregnant. But the fact that she was pregnant is not, you know, there were other things that happened because of which she then got treated the way that of her boss. So I'd like to have something which says, that indicates to me that her pregnancy, that is a valid discriminatory thing that we can act on, was a cause. You're saying temporal proximity. I'm saying temporal proximity coupled with the complete loss of the relevant record of plaintiff and plaintiff's comparators' cell records between November 2018 and January of 2019. But you're saying the loss of those records was due to her pregnancy? No, I'm saying. You want an adverse inference based on the loss of those records. An adverse inference based on the loss of those records, which are not explained by Deanna Jennings, who is the corporate representative of the two companies. And the fact that they come up with two different reasoning. First, they said that it's outside of circumstances under their control. And then later on, they changed it to say that everyone had to wait an increased amount of time during the time when Mr. Tanwala was on vacation. Our position is that given that they have lost all the records of the comparators, which would show from our perspective that there was no corresponding increase in wait time of her comparators or a corresponding decrease in the number of cars sold, that that in turn an adverse inference would have shown, an adverse inference for the plaintiff would show that the cause for the decrease in plaintiff's pay is a result of her pregnancy announcement and the implementation of the longer wait time, which correspond with Mr. Tanwala's vacation to Pakistan. Counsel, I had understood that what was missing was handwritten sales logs, but that you did have the pay stubs for all the comparators during this time period, and that, in fact, comparator information was put on the record at the summary judgment phase. Is that incorrect? That is incorrect in the sense that neither Mr. Tanwala nor Ms. Jennings could make heads or tells of the heavily redacted pay stub information. They could not tell which department the individuals for which the pay stubs were produced were in, and therefore, it is unclear which of the pay stubs were that of her actual comparators. But they were pay stubs. If there were redactions on the pay stub, I assume that could have been litigated before the district court, and if they were redacted in such a way that you could not understand whose pay stub was whose, that should have been presumably a matter taken up before the district court, but this foliation issue that you're raising with respect to the handwritten logs and that missing information, I understand the defendant to be claiming that that information was provided just albeit in terms of the printed out pay stubs and the like as opposed to a handwritten log, which was not maintained, and the suit was brought three years later, and their position is that the handwritten logs have been destroyed prior to the commencement of the lawsuit. So I would point your honor to the appellant's brief, which talked about how Deanne and Jennings did have a picture of a box that had 2018 on it. So the fact that they said that they maintained those records, but mysteriously, all the records pertaining to the plaintiff as well as the comparators, which is the only record which would show the number of cars that are sold. What the respondents want us to see is that based on the pay stub, then we would make an inference as to how many cars were actually sold, but during the deposition, they were unable to point out, you know, which of these individuals are the comparators because they had no idea. So respectfully, it is our position that that loss, that complete loss of the record of the plaintiff and the plaintiff's comparators would have shown that the reason for the loss of income is not due to factors outside of the car dealership's control, rather it would show a targeting of the plaintiff, which resulted in her from being the top saleswoman at the company to being the bottom performer. So just to put Judge Calabresi and Judge Vargas' questions together, if we disagree with you on spoliation, and I recognize the district court doesn't appear to have addressed it, but we have the magistrate judge's determination. If we agree with the magistrate judge's determination that you're not entitled to an adverse inference, then as to what is in the record from which a reasonable jury could conclude this was discrimination on the basis of pregnancy, you would point to the time delay occurring one month after the pregnancy announcement, and is there anything else that you would point to? Yeah. So in addition to the temporal proximity, I would point to the fact that the judge in the lower court credited the respondents' calculation over the appellants' and specifically anchoring the difference in time to the pregnancy announcement as opposed to the implementation of the wait time, and we provided case law which showed that it is- But that doesn't go to discrimination on the basis of pregnancy. That goes to harm, right? How does that go to discrimination on the basis of pregnancy? That goes to the calculation as to whether the difference is trivial or significant, and whether some harm could be shown. Right. So the amount of harm which would go to adverse action, but not to discrimination on the basis of pregnancy. So, Your Honor- Is there anything else in the record to point to other than what you call temporal proximity, that this occurred one month after her pregnancy announcement? I would point, Your Honor, to the record which had Mr. Stidham explaining what happened to Mr. Thanwala, and Mr. Thanwala responding that he doesn't really know why this is happening either. So, in other words, when the plaintiff complained about the decrease in our pay as a result of the implementation of the longer wait time, she mentioned that she believed that she was sabotaged, and Mr. Thanwala was unable to give her an explanation as to why there is this longer wait time, you know, at the time. So I would respectfully submit that it's not just that she lost her dealer track access, it's she lost her dealer track access, Mr. Guzman was prioritizing other individuals as- Am I right that what you're saying is that the proximity plus a failure of explanation is enough? Proximity, failure of explanation, plus Ms. Stidham also saw and observed that other co-workers also questioned why it is that now her customers had to wait a much longer time, and we also mentioned- That all goes to the degree of arm. Let's assume there is enough degree of arm, and then you're saying this degree of arm occurred proximately to her becoming pregnant, and when she asked why that arm was done, they couldn't give an explanation. Yes, sir. That's your argument. Okay. All right. Thank you, counsel. You have three minutes reserved for rebuttal. We'll hear from counsel Brown. Good morning, your honors. I may please the court, Matthew Brown from Millman Labuda Law Group for the appellee's defendants. This case boils down to three main issues. The longer wait times for credit checks for customers. Can you hear me, your honor? Yeah. Okay. Failure to promote and discharge. With respect to the longer wait times, I don't want to belabor the point on adverse employment action, but this is a speculative and attenuated chain of causation with respect to the alleged decrease in commissions because there's so much more to- Could you address the question of discrimination? Sure, your honor. Let's assume that we don't agree with you in the lower court, but that under the most recent Supreme Court, there is evidence of adverse treatment. Then the question is, is there evidence that this adverse treatment was due to her becoming pregnant? And she says the proximity and time and the failure of explanation for any different treatment is enough. I'd like you to address that. Okay. Sure, your honor. So from our perspective, that is not enough to form a discriminatory motive. There was a full month after her pregnancy announcement that she experienced, she doesn't allege that she experienced any discriminatory treatment. This started allegedly when Mr. Thanwala, her manager, went on a one-month vacation to Pakistan. During that time, she claims that she lost access to his dealer track account that he was allowing her to use. That was because of a neutral reason, not discriminatory reason. The password and login information for that account automatically changed and updated for security purposes. And while he was in Pakistan and in Communicado overseas, she was not able to utilize that login. Now, Mr. Guzman testified that he did not know that she had that access and that when she had requested access to dealer track, it was his understanding that he was not authorized to provide that access to any people. So this was an across-the-board policy. Now, if the explanation, if an explanation was given, you've just given me one, if that explanation is plausibly false, would that be enough to give her proximity to be a basis of discrimination? No, because without more, there's no evidence that Mr. Guzman had any animus towards her because of her pregnancy, like any comments or other mistreatment, especially in that one month after her pregnancy announcement. Everything was supposedly copacetic until Mr. Thanwala went away. So certainly, if he had some animus, there would have been some other mistreatment. But to go to Judge Calabrese's question, wouldn't pretext plus temporal proximity be enough to overcome a summary judgment? There doesn't have to be direct evidence of discriminatory remarks. If there's temporal proximity plus something such as some pretextual reason offered by the employer, that would seem to be enough under the precedent. Well, it's not only the dealer track access that is at issue. Let's just say, and let's stick with the dealer track access and the wait times, and not the other alleged harms such as the constructive discharge and the like. But on the wait times, as I understand it, the explanation that you just offered in the briefs is that she lost access to dealer track and Mr. Guzman was just slow with processing everyone's credit applications. But there is some testimony by plaintiff in the record that her credit applications were slowed down to an unusual degree compared to the other salesperson who were also submitting their customers for credit check, such as other salespersons were getting prioritized. If, for example, there was credible evidence that her credit application went in first and then colleagues put their credit application in with Mr. Guzman and he put hers to the bottom of the track and prioritized someone else, wouldn't that be sufficient evidence of pretext enough to get plaintiff over the hump? Well, pretext, not necessarily because what is it a pretext of? I mean, there's no direct evidence of anything. Yeah, but in our cases, where there is pretext and proximity, that is enough if a pretext is truly pretextual. There's enough. So I think you'd do better to argue that this isn't really pretextual. I mean, I think that's your strongest argument is that there isn't really enough evidence of pretext because if there is pretext, we have said that it doesn't mean you win, but you get by summary judgment. Right. So from our point of view, there is no pretext. He testified that he did not know about this. And with respect to the increased wait times, again, this was operational. There was two managers running credit checks before Mr. Sanwala's vacation. Once he went on vacation, there's now one person. And it's unclear how much longer Ms. Thitum's customers were actually waiting. She had testified that it should have taken around 20 minutes normally, and it was taking 40 to 60 minutes. But she also testified that when she was running credit checks, she would get her customers, or 40 to 50 percent of her customers, in and out in about an hour or less. So was there actually any additional wait time is even a question because... Right. So on this prong, we're asking, is there an inference of discrimination on the basis of pregnancy? There's sort of two questions. Is there discrimination in the sense of, is she treated differently than anyone? So we have to look at the record and say a reasonable jury could conclude that her wait times were longer than the other people's wait times processed by Guzman. And then second, that that distinction was on the basis of pregnancy. We've talked about on I think what you're focusing on now is the question of whether there is anything in the record from which a reasonable jury could conclude that her wait times were longer than other employees who Guzman was processing. Is that fair to say? Yes. So, I mean, there's also this... And we have, I think, at most on that somewhat conflicting conclusory statements from the plaintiff. Is there anything else in the record that would go to Mr. Guzman processing her credit checks more slowly than the other salespeople? There isn't, but there is also reference in the record that they did have prior interpersonal disputes before her pregnancy. So that predated the pregnancy. If that could have been a reason, that's still not pretext for discrimination. That's something that was preexisting at the time. There's also these outside factors that not every deal is the same. So just because her deals may have been processed second or first, the response from the banks for approval... I think the things you're saying now sound like factual disputes. I mean, as you're articulating them, well, there are multiple factors. We have to kind of isolate what could have been based on Mr. Guzman treating her differently and what could have been based on other factors. Those are factual questions in dispute. I guess I want to go back to just what is in the record from which the jury could conclude that Mr. Guzman processed her more slowly than other salespeople. And it sounds like your response to that was, even if there is, it's because they didn't like each other and not because of pregnancy. So maybe you think there is something in the record. So apologies if I jumped over the question to the next step of my mindset. But from our perspective, it is only conclusory statements or hearsay that she's relying on. And Ms. Troy discussed that coworkers mentioned that she was waiting longer. First of all, that would be hearsay. But second of all, there was something in the record that it was about noticing her commissions had decreased. It wasn't a statement that her wait times were longer. And in the nature of commission sales plans, commissions fluctuate. Her commissions even fluctuated by hundreds of dollars a week even before her pregnancy announcement. But you also do have the argument on our cases that if there is sufficient evidence that a pretext was a non-discriminatorily based pretext, that then the pretext does not add that much to tempo. We have several cases that have said that. And you were suggesting something of that sort. But I'm not sure if you're suggesting that with sufficient evidence so that it gets by summary judgment or not. But I'm kind of curious about that. Yeah. So I mean, there was evidence or testimony about like personal disputes or dislike between the two of them. But if anything, there's nothing in the record to point to anything else other than that. Or that he even was processing her more slowly. It's all conclusive.  All right. Thank you, counsel. All right. Thank you. We'll hear a rebuttal from Attorney Troy for three minutes. Thank you, Your Honors. In the respondent's opening, he talked about pretext. And I would just like to turn Your Honors' attention to the portion of the appellant's brief where after plaintiff appellant experienced the longer waiting time in December of 2018, she specifically brought the issue of the slower processing of the credit application to Andres Guzman's attention. And Andres Guzman had no clear response as to the cause of the delay. So if the respondents are correct that the reasoning was the various reasons that they've put forth, which is that Guzman was slow or there were factors outside of the car dealership's control, then there was no reason why Andres Guzman could not provide any sort of rationale. But Ms. Troy, that explanation is Mr. Guzman's slow. And she asked him why is her credit processing taking so long. And here his response was supposed to be, I'm very slow. That's an implausible conversation for a manager to have with their employee. But yet, the defendant can still rely upon the fact that the manager may be slow. I'm more concerned with is there evidence in the record that you can point us to as to Mr. Guzman processing her applications more slowly than other salespersons, or prioritizing other salespersons over hers, which would be very probative of the question of whether there was differential treatment here, as opposed to him just being consistently slow as a processor of credit applications. Is there such evidence? So, to clarify what the respondent's reasoning is not what the appellant agrees with. So, we disagree that the reasoning is because that. I'm still asking you, is there evidence in the record that Mr. Guzman processed her applications more slowly than other salespersons in the dealership? Is there any such evidence? There may not be. I just would like to know if there is. Yes, Your Honor. So, A167, which is the appendix at page 167, paragraph 87, in response to the respondent's statement of material fact 87, plaintiff cites to her deposition testimony as to her questioning the defendant that it doesn't add up. And I would point Your Honor to that. That's it. Yeah, I do. Okay. Thank you. Appreciate the arguments of counsel. The matter is taken under advisement.